UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **GILEDAN SEARCH LLC,** | CASE NO. 3:24-cv-0263 |
| Plaintiff, | |
| v. | |
| **AUTONOMIZE, INC.,** | |
| Defendant. | FEBRUARY 28, 2024 |

## COMPLAINT

Plaintiff Giledan Search LLC ("Giledan"), for its Complaint against Defendant Autonomize, Inc. d/b/a Autonomize AI ("Autonomize"), alleges as follows:

### THE PARTIES

1. Giledan is a Connecticut limited liability company whose principal place of business is in Connecticut. Its members, Daniel Volberg and Michelle Volberg, are Connecticut residents.

2. Autonomize is a Delaware corporation whose principal place of business is in Austin, Texas.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332. There is complete diversity of citizenship between Giledan and Autonomize, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Autonomize because it transacted business in Connecticut within the meaning of the state long-arm statute Conn. Gen. Stat. § 52-59b(a)(1) by (i) engaging Giledan, a Connecticut firm, to undertake search

assignments for Autonomize's hiring needs and (ii) establishing a "business relationship" with Giledan within the meaning of Conn. Gen. Stat. §§ 42-481(4) and 42-482(e).

5. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the subject of the action occurred in Connecticut.

**FACTUAL ALLEGATIONS**

6. Giledan operates as an employment candidate search firm offering placements for an agreed-upon, non-refundable contingency fee or "commission."

7. Autonomize, a technology and software firm, engaged Giledan to search for candidates to fill its hiring needs, including its "Head of Engineering" position.

### GILEDAN AND AUTONOMIZE ENTER INTO THE AGREEMENT

8. On May 30, 2023, Giledan entered into a written agreement with Autonomize ("the Agreement"), executed by Autonomize's CEO, Ganesh Padmanabhan.

9. Giledan agreed to "accept search assignment[s] from [Autonomize] for the duration of the Agreement. [Giledan] will then, on a best-efforts basis work to source employment candidates for [Autonomize]." Agreement at ¶ 2.

10. The Agreement provides "[Giledan] will submit qualified candidates to [Autonomize] via email. Any original candidate referral will be the property of [Giledan] for a period of one year from the final day of [Giledan's] active representation of candidate." Agreement at ¶ 3.

11. The Agreement further provides that "[a]ny original candidate will be the property of [Giledan] for a period of one year from the final day of [Giledan's] active representation of candidate." Agreement at ¶ 3.

12. A placement occurs under the Agreement when Autonomize hires an original candidate referral. Agreement at ¶ 3.

13. Under the Agreement, Giledan is to receive a 22% commission from Autonomize for each candidate placement calculated based on his or her expected annual salary (base and bonus, excluding equity), with payment due within 45 net days of invoice. Agreement at ¶ 4.

14. The Agreement provides a replacement "guarantee" that: "[i]f the candidate is terminated or leaves the company within 90 calendar days of start date, [Giledan] will make best efforts to replace the candidate at no cost." Agreement at ¶ 4(C)(a).

15. The "Guarantee of Placement is voided if payment is not received within 45 days of [the] candidate's start date, without exception." Agreement at ¶ 4(C)(b).

16. The Agreement permits cancelation "at any time or for any reason or revised, by communication in the form of e-mail or hard copy." Agreement at ¶ 1(B).

### GILEDAN'S FIRST CANDIDATE PLACEMENT: "CHRIS"

17. In reliance on the Agreement, Giledan performed an extensive search on Autonomize's behalf to place a suitable candidate in its "Head of Engineering" role.

18. On or around August 21, 2023, Giledan placed "Chris" with Autonomize as Head of Engineering for an annual expected salary of $300,000.

19. Giledan invoiced Autonomize its $66,000 commission for placing Chris, which it processed on or around his start date.

20. Autonomize timely paid Giledan's commission of $66,000 for placing Chris.

## AUTONOMIZE TERMINATES CHRIS'S EMPLOYMENT

21. In September 2023, Autonomize told Giledan that Chris was "not working out" and asked Giledan to find potential replacement candidates.

22. Autonomize terminated Chris's employment on November 30, 2023, outside the Agreement's 90-day replacement guarantee period.

23. Autonomize acknowledged that it elected to terminate Chris's employment outside the 90-day replacement guarantee period, stating: "So we crossed that 90 day mark by 10 days. End of the day, it was a bad hire that did not work – but due to reasons outside, we set the last day to be post the 90 day mark."

## GILEDAN'S SECOND CANDIDATE PLACEMENT: "NAVEEN"

24. In December 2023, Giledan submitted "Naveen" to Autonomize as a candidate for the Head of Engineering role.

25. Autonomize interviewed Naveen and subsequently offered him the position.

26. Naveen told Giledan that he accepted Autonomize's offer and expected to start work on or around January 8, 2024.

27. Under the Agreement's express terms, Giledan earned a commission for Naveen's placement.

## AUTONOMIZE CANCELS THE AGREEMENT AND WRONGFULLY WITHHOLDS GILEDAN'S COMMISSION FOR NAVEEN'S PLACEMENT

28. Giledan e-mailed Autonomize requesting payment for Naveen's placement, totaling $66,000, or 22% of the expected annual salary for a Head of Engineering.

29. Rather than honor its obligations under the Agreement, Autonomize refused to pay Giledan's commission for placing Naveen and called him a "backfill candidate."

30. In response, Giledan cited the Agreement's express terms and insisted that Autonomize owed Giledan a commission for placing Naveen.

31. Upon information and belief, Autonomize knew it was not entitled to the replacement guarantee and demanded a replacement without intending to pay Giledan.

32. Autonomize threatened to cancel the Agreement to try and force Giledan to change its terms and extend the 90-day replacement guarantee beyond its original terms.

33. Giledan refused to be bullied by Autonomize and proposed (i) "a longer guarantee period for you to work with [Naveen] and assess," and (ii) to "count 50% of the invoice towards any additional [replacement] hires . . . ."

34. Autonomize then canceled the Agreement on January 4, 2024, via e-mail, stating: "Please treat this as a written notice of cancellation of our contract with immediate effect - we do not plan to hire anyone that you have tried placing and please let all of those candidates know we don't intend to hire them because they came from Giledan search. We don't plan to issue an offer to Naveen. Good luck."

35. The Agreement permits no-cause cancelation by either party, but Giledan still earned a commission for any placements made under the Agreement.

36. Giledan repeated its payment demand on Autonomize by e-mail and certified mail on February 21, 2024.

37. Autonomize stated in response via e-mail on Feb. 21, 2024, at 4:10 PM, that it will not pay Giledan its commissions owed for placing Naveen.

38. Giledan's efforts led to two candidate placements with Autonomize under the Agreement, but Autonomize only paid Giledan's commission for one placement.

## COUNT ONE — Breach of Contract

1–38.   Paragraphs 1–38 are realleged as Paragraphs 1–38 of Count One.

39.   The Agreement was a valid, binding contract.

40.   Giledan duly performed a search and placement effort on Autonomize's behalf and met its obligations and duties under the Agreement.

41.   Under the Agreement's express terms, Giledan satisfied the condition precedent to earning a commission for Naveen's placement with Autonomize.

42.   Autonomize benefitted from Giledan's performance but refused to pay Giledan's agreed-upon commission for placing Naveen, in breach of the Agreement.

43.   As a result of Autonomize's breach, Giledan suffered money damages, including the sum of $66,000 in commissions due.

## COUNT TWO — Breach of the Covenant of Good Faith & Fair Dealing

1–43.   Paragraphs 1–43 are realleged as Paragraphs 1–43 of Count Two.

44.   Autonomize acted in bad faith and impeded Giledan's right to receive benefits that it reasonably expected to receive under the Agreement for placing Naveen.

45.   Autonomize continues to wrongfully withhold Giledan's commissions due under the Agreement for Naveen's placement.

46.   Upon information and belief, Autonomize attempted to deliberately mislead Giledan as to Naveen's placement to unfairly avoid paying Giledan's commission.

47.   Autonomize exercised the cancelation provision of the Agreement in bad faith by attempting to coerce Giledan into abandoning its legitimate demands for payment.

48.   Autonomize's foregoing actions were deliberate attempts to avoid the spirit of the Agreement.

49. As a result of Autonomize's breach of the covenant of good faith and fair dealing, Giledan suffered and claims money damages.

**COUNT THREE** — **Violation of the Connecticut Unfair Trade Practices Act**

1–49. Paragraphs 1–49 are realleged as Paragraphs 1–49 of Count Three.

50. Autonomize is a "person" for the purposes of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq*.

51. At all relevant times to the Agreement, Autonomize engaged in "trade and commerce" for the purposes of CUTPA, Conn. Gen. Stat. § 42-110a *et seq*.

52. Autonomize aggravated its breach of the Agreement by intentionally engaging in unscrupulous and unethical conduct with a sinister motive.

53. By its own admission, Autonomize had no intention of paying further commissions after terminating Chris's employment when it induced Giledan to source replacements.

54. Autonomize had an obligation to disclose to Giledan that it hired Naveen but intentionally misled Giledan to believe that it had not.

55. Upon information and belief, Autonomize concocted a scheme to intentionally conceal its breach of the Agreement after hiring Naveen and coordinated with Naveen to purposely deceive Giledan as to his employment with Autonomize.

56. Upon information and belief, Naveen abruptly cut off contact with Giledan at Autonomize's behest shortly after Naveen's anticipated start date.

57. Until then, Giledan and Naveen had been in active communication over the terms of his offer and Naveen's employment search.

58. Autonomize also unfairly disputed Giledan's earned commission while refusing to reveal Naveen's annual expected salary, on which the commission is based.

59. As a result of Autonomize's foregoing unfair and dishonest conduct in violation of CUTPA, Giledan suffered an ascertainable loss, including search expenditures, valuable work product and business information, and unpaid commissions.

**COUNT FOUR — Violation of Connecticut's Sales Representative Commission Protection Statute**

1–59. Paragraphs 1–59 are realleged as Paragraphs 1–59 of Count Four.

60. At all times relevant to the Agreement, Giledan's placement fees constituted "commission[s]" for the purposes of Conn. Gen. Stat. § 42-481(1).

61. At all times relevant to the Agreement, Giledan was a "sales representative" for the purposes of Conn. Gen. Stat. § 42-481(4).

62. At all times relevant to the Agreement, Autonomize was a "principal" for the purposes of Conn. Gen. Stat. § 42-481(3).

63. Through the Agreement, Autonomize established a "business relationship" with Giledan for the purposes of Conn. Gen. Stat. §§ 42-481(4) and 42-482(e).

64. At the time Autonomize terminated the Agreement within the meaning of Conn. Gen. Stat. § 42-482(a), Autonomize owed Giledan commissions totaling $66,000.

65. Autonomize refused and has failed to pay Giledan's full commissions earned, which were due no later than 45 days after invoice or within 30 days of the Agreement's termination for the purposes of Conn. Gen. Stat. § 42-482 *et seq*.

66. Autonomize continues to wrongfully withhold Giledan's commission for placing Naveen and has created a fiction that Autonomize did not hire Naveen.

67. Autonomize acted willfully, wantonly, recklessly, and in bad faith by the foregoing and is liable to Giledan for twice the full amount of the $66,000 in outstanding commissions owed to Giledan for the purposes of Conn. Gen. Stat. § 42-482(b).

68.     Giledan is further entitled to and seeks reasonable attorney's fees and costs under Conn. Gen. Stat. § 42-482(d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment and relief as follows:

- A.  Compensatory damages;
- B.  Statutory damages pursuant to Conn. Gen. Stat. § 42-482(b) for twice the full amount of unpaid commission owed by Autonomize;
- C.  Punitive damages pursuant to Conn. Gen. Stat § 42-110g;
- D.  Prejudgment interest pursuant to Conn. Gen. Stat § 37-3a;
- E.  Postjudgment interest pursuant to Conn. Gen. Stat § 37-3b;
- F.  Reasonable attorney's fees and costs pursuant to Conn. Gen. Stat §§ 42-110g and/or 42-482(d); and
- G.  Such other relief as Giledan may be entitled at law and/or in equity.

PLAINTIFF,
GILEDAN SEARCH, LLC

By: _____
Glenn A. Duhl  ct03644
Zangari Cohn Cuthbertson
   Duhl & Grello P.C.
59 Elm Street, Suite 400
New Haven, CT 06510
Tel:   (203) 786-3709
Fax:  (203) 782-2766
gduhl@zcclawfirm.com